UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JMM PROPERTIES, LLC,

                Plaintiff,

vs.                                     Docket No.: 5:08-CV-1382 (GTS/DEP)

ERIE INSURANCE COMPANY,

                Defendant.

---

STATE OF NEW YORK   )
                              )   ss:
COUNTY OF ERIE       )

## **ATTORNEY AFFIDAVIT**

R. ANTHONY RUPP III, ESQ., being duly sworn, deposes and says:

1.    I am an attorney duly licensed to practice law in the State of New York, and I am a partner with Rupp, Baase, Pfalzgraf, Cunningham & Coppola LLC, attorneys for defendant Erie Insurance Company ("Erie") in connection with the above-captioned matter. I have worked on this matter extensively; therefore, I am fully familiar with the facts set forth herein.

2.    This affidavit is submitted in support of Erie's motion to disqualify Donald R. Gerace, Esq., from representing plaintiff with respect to this matter.

## PROCEDURAL HISTORY

3. On November 7, 2008, JMM commenced a civil action against Erie by filing its summons and notice in the Madison County Clerk's Office. A copy of the summons and notice is attached hereto as Exhibit A.

4. Erie was served with the summons and notice on or about December 2, 2008 when JMM served the Superintendent of Insurance of the New York State Insurance Department at its New York City, New York office.

5. On or about December 30, 2008, Erie filed a Notice of Removal to remove the action to the United States District Court for the Northern District of New York based on complete diversity between the parties and the amount in controversy. A copy of the Notice of Removal is attached hereto as Exhibit B.

6. On January 29, 2009, JMM filed a complaint with the Clerk of the District Court using the CM/ECF electronic filing system. A copy of the complaint is attached hereto as Exhibit C.

7. The complaint arises from a fire at real property known as 106 North Warner Street, Lenox Township, New York. Jeffrey Truman was a principal of JMM as of the date of loss. The complaint alleges damages in the amount of $4,178,000.00 for breach

of contract. The complaint further alleges damages in the amount of $87,551.23 under the builder's risk coverage part. *See* Exhibit C.

8. On February 4, 2009, Erie filed its answer with the Clerk of the District Court using the CM/ECF electronic filing system. A copy of the answer is attached as Exhibit D.

## STATEMENT OF FACTS

9. Plaintiff insured the real property known as 106 North Warner Street, Lenox Township, New York. *See* Certified Copy of JMM's Insurance Contract with Erie, a copy of which is attached hereto as Exhibit E. The premises were insured by Erie under policy number Q23 6750003 NY. *Id.*

10. On or about November 12, 2006, the plaintiff's property was deliberately set on fire by Jeffrey Truman, Jr., the son of one of plaintiff's principals, Jeffrey Truman, Sr. Following the arson fire, plaintiff submitted a claim to Erie, seeking insurance proceeds for damages related to the fire alleged to be in excess of $4 million.

11. Following the arrest of the arsonist, Jeffrey Truman, Jr., the Madison County District Attorney's Office brought criminal charges against Jeffrey Truman, Sr. related to the fire. The charges were based on Jeffrey Truman, Jr.'s statements to local

authorities that he intentionally set the fire that occurred at the insured building at the direction of his father, Jeffrey Truman, Sr.

12. Jeffrey Truman, Sr. was indicted for several felonies related to the fire at the insured premises, including Arson in the Third Degree in violation of Penal Law §150.10, Insurance Fraud in the Second Degree in violation of Penal Law §176.25, Conspiracy in the Fourth Degree in violation of §105.10, Hindering Prosecution in the Second Degree in violation of Penal Law §205.60, and Criminal Possession of a Forged Instrument in violation of Penal Law §170.25.

13. While criminal proceedings against Jeffrey Truman, Sr. were ongoing, plaintiff continued to pursue its insurance claim with Erie. Upon receipt of the claim from plaintiff, Erie attempted to conduct an investigation in order to make an informed coverage determination. As part of the investigation, Erie retained counsel to assist it with its investigation and to conduct examinations under oath.

14. Erie's counsel initially requested that only two of the plaintiff's principals, Jeffrey Truman, Sr. and Michael Orr, appear for examinations under oath. Attached as Exhibit F are copies of Erie's correspondence with Jeffrey Truman, Sr., Michael Orr, and Michael Froncek. Erie specifically wanted to question Mr. Truman first regarding the facts and circumstances relating to the fire because his son was arrested for starting the fire, and his son advised the local authorities that he started the fire at the subject building at the direction of his father. Based on this information, Mr. Truman became a focal point of Erie's claim

investigation, and he was the individual with whom Erie was most eager to speak regarding the fire and its aftermath.

15. Erie made its initial demand for the examinations under oath on December 8, 2006. *Id.* In response to Erie's counsel's correspondence to Mr. Truman and Mr. Orr requesting their examinations under oath, Erie's counsel received correspondence from plaintiff's then-attorney, Michael J. Garcia, Esq., indicating that he had been retained by the plaintiff. A copy of the December 15, 2006 letter is attached as Exhibit G. Plaintiff's then-counsel requested that the examinations under oath be adjourned in order for the plaintiff to gather documents responsive to Erie's demand. *Id.* The examinations were rescheduled, and by way of correspondence dated February 28, 2007, Erie's counsel confirmed that the examinations under oath would be held on March 8, 2007. A copy of the February 28, 2007 letter is attached as Exhibit H.

16. On March 5, 2007, three days before the examinations under oath were scheduled to take place, Erie's counsel received correspondence from Donald R. Gerace, Esq., indicating that he had been retained by Jeffrey Truman, Sr. to serve as his criminal attorney. A copy of the March 5, 2007 correspondence is attached as Exhibit I. Attorney Gerace's correspondence stated that "Mr. Truman was arraigned in Madison County Court on March 2, 2007 regarding criminal charges involving said fire loss. As a result of said charges, Mr. Truman will not be available for examination until the conclusion of said criminal charges." *Id.*

17. As Attorney Gerace's March 5, 2007 letter indicated that Mr. Truman would not appear, the examinations under oath scheduled for March 8, 2007 were cancelled. Because Jeffrey Truman, Sr. was implicated by his son, and because he was indicted on arson charges by the local authorities relative to the fire that occurred at the subject property, it was Erie's intention to question Mr. Truman under oath before conducting the examination under oath of Mr. Orr. This had been Erie's plan since its counsel was hired to assist it in investigating the insured's claim. Erie also sought to question Mr. Truman first in an effort to prevent the insured's principals from coordinating and harmonizing their testimony about the circumstances of the fire.

18. In an effort to bring about the plaintiff's cooperation, Erie's counsel wrote to Attorney Gerace on March 8, 2007, and advised him that Mr. Truman's actions were jeopardizing the plaintiff's claim. A copy of the March 8, 2007 correspondence is attached as Exhibit J. Erie's counsel advised Attorney Gerace and the plaintiff's then-counsel, Attorney Garcia, that Mr. Truman's position was unacceptable to Erie, that Erie would not waive its right to a timely investigation into the insured's claim, and that Erie's right to investigate and to conduct Mr. Truman's examination under oath was not stayed simply because criminal charges were pending against Mr. Truman. *Id.* Erie's counsel's letters requested that Attorney Garcia and Attorney Gerace contact him to reschedule the examinations under oath immediately. *Id.*

19. Erie heard nothing from plaintiff's then-counsel (Mr. Garcia) or Mr. Truman's criminal attorney (Mr. Gerace) for many weeks. Because Erie's counsel did not

receive any communication from Attorney Garcia or Attorney Gerace, in correspondence dated April 23, 2007, the examinations under oath were rescheduled for May 16, 2007. A copy of the April 23, 2007 correspondence is attached as Exhibit K.

20. In response, Attorney Gerace stated that he would confirm Mr. Truman's appearance for May 16, 2007 at a later time; however, he failed to do so. A copy of correspondence from Attorney Gerace is attached as Exhibit L.

21. On May 3, 2007, Attorney Garcia confirmed that both Mr. Orr and Mr. Truman would be attending their examinations under oath. A copy of the May 3, 2007 correspondence is attached as Exhibit M. With that correspondence, Attorney Garcia enclosed a release indicating that Mr. Truman had resigned as one of plaintiff's members. A copy of the release is attached as Exhibit N.

22. On May 16, 2007, Mr. Truman did not appear for his examination under oath, which was to take place in Utica, New York. At that time, Erie was present with two of its attorneys, as well as the adjuster handling the claim on Erie's behalf, and the special investigations unit investigator assigned to the plaintiff's claim. The plaintiff's then-attorney, Attorney Garcia, appeared, as did Mr. Orr.

23. After waiting a period of time for Mr. Truman to appear, a conversation on the record occurred between Erie's counsel, R. Anthony Rupp III, Esq., and Attorney Garcia, plaintiff's then-counsel, in which Attorney Garcia represented that Mr. Truman intended to

appear for his examination under oath but that he would not answer any questions relating to the fire loss. A copy of the May 16, 2007 transcript is attached as Exhibit O. Attorney Garcia indicated that Mr. Truman was not going to answer any questions about the fire on the advice of his criminal defense attorney, Attorney Gerace. *Id.* Attorney Garcia indicated that he informed Mr. Truman of his obligations under the insurance policy but that Mr. Truman's criminal defense attorney had advised Mr. Truman not to answer any questions regarding the fire. *Id.*

24. After Mr. Truman's non-appearance on May 16, 2007, Attorney Rupp wrote to Attorney Garcia, the plaintiff's attorney, and Attorney Gerace, Mr. Truman's criminal attorney, and explained the consequences of plaintiff's ongoing failure to produce Mr. Truman for an uninhibited examination under oath. Attorney Rupp's letter requested that they contact him to reschedule the examinations under oath. A copy of the May 18, 2007 correspondence is attached as Exhibit P.

25. On May 18, 2007, Attorney Garcia forwarded a copy of Attorney Rupp's letter to Attorney Gerace. A copy of Attorney Garcia's May 18, 2007 letter is attached as Exhibit Q. In his correspondence, Attorney Garcia informed Attorney Gerace that "**[i]t is imperative that you contact me to discuss when your client will be available for the examination to take place. If he refuses to cooperate with this investigation and jeopardizes JMM's claim in any way, we will have no choice but to take any and all appropriate action to protect our claim.**" *Id.* (emphasis added).

26. After not hearing anything from Attorney Garcia or Attorney Gerace for 11 days, Erie's counsel wrote to them again on May 29, 2007, and advised that Erie was making a final attempt to gain the plaintiff's cooperation and to have Mr. Truman appear for an uninhibited examination under oath. A copy of the May 29, 2007 correspondence is attached as Exhibit R. In response, Attorney Garcia and Attorney Gerace held firm to their previously articulated positions that Mr. Truman would not testify until his criminal charges were resolved. A copy of the May 30, 2007 correspondence from Attorney Garcia is attached as Exhibit S.

27. Attorney Rupp made one last effort to reschedule the examinations under oath by way of correspondence dated June 4, 2007 – some seven months after the fire occurred. A copy of the June 4, 2007 correspondence is attached as Exhibit T. Plaintiff failed to reschedule the examinations under oath, and instead continued to maintain the position that Mr. Truman would assert his Fifth Amendment right and would not testify at an examination under oath until after the criminal charges against him were resolved. A copy of a June 12, 2007 letter from Attorney Gerace explaining this position is attached as Exhibit U.

28. The examinations under oath, including an examination under oath of Mr. Truman, never occurred. Attorney Gerace was well aware that it was Erie's plan to pursue its claim investigation by examining Mr. Truman under oath; however, Attorney Gerace continued to thwart Erie's investigation by failing to produce Mr. Truman for an uninhibited examination. Because Erie was unable to conduct or complete its claim investigation, Erie denied plaintiff's insurance claim, in part, due to plaintiff's willful non-cooperation with Erie's

- 9 -

investigation. A copy of Erie's denial letter to plaintiff, dated July 25, 2007, is attached as Exhibit V.

29. After the plaintiff's claim was denied, Erie commenced an action seeking a declaration that its denial was proper and that there was no coverage for the plaintiff's loss due to plaintiff's willful non-cooperation. Erie's declaratory judgment action is pending in New York Supreme Court, Madison County, and an appeal of the trial court's decision and order that conditionally granting Erie's motion for summary judgment has been perfected by Erie in that case.

30. Shortly thereafter, plaintiff commenced this action against Erie alleging breach of contract. Since the commencement of this action, Attorney Gerace has appeared as co-counsel to plaintiff. *See* Exhibit C.

31. Despite appearing and serving as co-counsel to the plaintiff with respect to this matter, Attorney Gerace continues to represent Mr. Truman with respect to his criminal matters.

32. Most recently, on May 7, 2009, Attorney Gerace appeared on behalf of Mr. Truman. During that appearance, Attorney Gerace acknowledged that he also is serving as co-counsel to JMM. A partial copy of the transcript is attached as Exhibit W.

33.     Because Erie believes that Attorney Gerace's joint representation of JMM and Mr. Truman is improper in light of the conflicts of interest presented by Attorney Gerace's representation of both parties, Erie's counsel wrote to Attorney Gerace on April 9, 2009 to ascertain his position on the conflicts of interest.  *See* Electronic mail message from Marco Cercone, Esq. to Donald R. Gerace, Esq. dated April 9, 2009, a copy of which is attached hereto as Exhibit X.  To date, Mr. Gerace has not responded to this request, nor has he articulated how his joint representation of two adverse parties to this litigation is not a conflict of interest.

34.     In light of the forgoing, Erie brings the instant motion to disqualify Donald R. Gerace, Esq., from representing plaintiff with respect to all matters related to this action.  As Attorney Gerace has represented both JMM Properties, LLC, collectively, and Jeffrey E. Truman, Sr., individually, in matters stemming from the same incident that is at issue in this case, Attorney Gerace's representation of both parties represents a conflict of interest and defendant's motion to disqualify Attorney Gerace should be granted in its entirety.

## ARGUMENT

### DONALD R. GERACE, ESQ., CANNOT REPRESENT PLAINTIFF DUE TO THE CONFLICT OF INTEREST BETWEEN JMM PROPERTIES, LLC AND JEFFREY E. TRUMAN, SR.

35.     Although New York's rules governing the professional responsibility of attorneys are not legally binding on federal courts in New York, those courts have looked to the language of New York's rules when disqualifying law firms, and federal courts have adopted the

requirements into their disqualification analysis. *See* Defendant's Memorandum of Law in Support of Its Motion to Disqualify dated June 17, 2009 ("Memorandum of Law") at p. 4.

36. The recently adopted language of the New York Rules of Professional Conduct separates consentable conflicts from nonconsentable conflicts by adopting a straightforward objective standard that asks whether the lawyer seeking consent "reasonably believes" that he will be able to provide "competent and diligent representation" to each affected client. *Id.* at 5.

37. For the reasons set forth in defendant's Memorandum of Law, Attorney Gerace should be disqualified as plaintiff's co-counsel in this case because his joint representation of the plaintiff and Jeffrey Truman, Sr. is an unwaivable conflict of interest.

38. Moreover, because Mr. Gerace has (1) advised Mr. Truman to take a position against plaintiff's interests; (2) simultaneously represented both Mr. Truman and JMM in matters involving the same occurrence notwithstanding the fact that plaintiff has viable claims against Mr. Truman for his breach of fiduciary duty and loyalty; and (3) potentially prevented JMM from pursuing indemnity from the party responsible for causing the fire, Jeffrey Truman, Sr., he should be disqualified as plaintiff's co-counsel.

39. Further, Attorney Gerace cannot deny the reasonably foreseeable risk that the parties' interests will become even more directly adverse in the event Erie is successful in defending this action and JMM's remaining cause of action is against only Mr. Truman. *Id.* In

fact, Mr. Truman already has withdrawn as a principal of JMM; therefore, he and JMM are directly adverse to one another as JMM has a claim against Mr. Truman for intentionally causing its loss. As a result of the foregoing, and for the reasons stated in defendant's Memorandum of Law, Attorney Gerace should be disqualified from representing JMM in this matter.

WHEREFORE, your deponent respectfully requests an order disqualifying Donald R. Gerace, Esq. from serving as plaintiff's co-counsel in this matter, for the costs of this motion, and for such other and further relief as the Court deems just and proper.

_____
R. Anthony Rupp III

Sworn to before this
17th day of June, 2009

_____
Notary Public

MARCO CERCONE
Notary Public, State of New York
Qualified in Erie County
My Commission Expires April 21, 2011