UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JMM PROPERTIES, LLC,

                              Plaintiff,                5:08-CV-1382
                                                          (GTS/ATB)

v.

ERIE INSURANCE COMPANY,

                              Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| WILKOFSKY, FRIEDMAN, KAREL & CUMMINS<br>  Counsel for Plaintiff<br>229 Broadway, Suite 1700<br>New York, NY 10007 | HARRY A. CUMMINS, ESQ. |
| LAW OFFICES OF DONALD R. GERACE<br>  Counsel for Plaintiff<br>2615 Genesee Street<br>Utica, NY 13501 | DONALD R. GERACE, ESQ. |
| RUPP, BAASE, PFALZGRAF, CUNNINGHAM &<br>  COPPOLA LLC<br>  Counsel for Defendant<br>424 Main Street<br>1600 Liberty Building<br>Buffalo, NY 14202-3616 | MARCO CERSONE, ESQ. |

GLENN T. SUDDABY, United States District Judge

## **MEMORANDUM-DECISION and ORDER**

      Currently before the Court, in this breach of insurance contract action filed by JMM

Properties, LLC ("Plaintiff") against Erie Insurance Company ("Defendant"), is Defendant's

motion for summary judgment pursuant to Fed. R. Civ. P. 56 or for preclusion of the testimony

of Plaintiff's expert pursuant to Fed. R. Evid. 702 (Dkt. No. 77). For the reasons set forth below,

Defendant's motion for summary judgment is granted, and its motion for preclusion of expert testimony is denied as moot.

I.   **RELEVANT BACKGROUND**

   A.   **Plaintiff's Claims**

Generally, Plaintiff's Complaint alleges two counts of breach of insurance contract against Defendant. According to the Complaint, Defendant issued an insurance policy insuring premises located at 106 North Warner Street, Lennox Township, Madison County, New York ("the Property") for a period of one year beginning November 17, 2005 ("the Policy"). (*See generally* Dkt. No. 8 [ Compl.].) The Policy insured the Property for $4,261,000 and insured builder's risk for $4,400,000. On November 12, 2006, the Property was "damaged by a covered peril." (*Id.*) The Complaint further alleges that, as a result, Plaintiff suffered building damage of $4,261,000 and sustained damage under the builder's risk portion of the policy in at least the sum of $87,551.23. The Complaint alleges that although Plaintiff demanded payment of these sums, Defendant has not paid the sums requested, except the amount of $82,500, which was remitted to Plaintiff's mortgagee. Consequently, Plaintiff seeks judgment on both of its causes of action in the sum of $4,266,051.23.

   B.   **Defendant's Answer**

In its Answer, Defendant asserts several affirmative defenses, including that Plaintiff is not entitled to coverage under the Policy because (1) it failed to comply with the terms of the Policy requiring it to cooperate with Defendant in its investigation of Plaintiff's claims; (2) it violated the terms of the Policy when it knowingly and deliberately misrepresented the cause of its loss in the Proof of Loss submitted to Defendant; and (3) it violated the terms of the Policy

2

when one of its principals, Jeffrey Truman, Sr. ("Truman"), increased the hazard to the Property by arranging for incendiary substances to be introduced into the building and ignited for purposes of causing a fire to damage the Property, and by obtaining assistance from others to cause the fire. (Dkt. No. 9 [Ans.].)

### C. Undisputed Material Facts

The following material facts have been asserted and supported by Defendant in its Local Rule 7.1 Statement of Undisputed Material Facts, and either admitted or denied without a supporting record citation by Plaintiff in its Local Rule 7.1 Response. (*Compare* Dkt. No.77-39 [Def.'s Rule 7.1 Statement] *with* Dkt. No.81, at 26-30 [Pl.'s Rule 7.1 Response].)

Plaintiff owned the Property, which was insured by Defendant under the Policy. On November 12, 2006, the Property was damaged by fire. On that day, the Policy was in full force and effect. Also on that day, Plaintiff had three principals, Truman, Michael Orr and Michael Froncek, each of whom held a one third interest in the Property.

After the fire, the Madison County District Attorney brought criminal charges against Truman. An indictment against Truman charged him with several felonies related to the fire at the Property, including arson, first-degree insurance fraud, fourth-degree conspiracy, second-degree hindering prosecution, and two counts of second-degree possession of a forged instrument.

Following the fire, Defendant commenced an investigation into Plaintiff's claim. As part of its investigation, Defendant's attorneys requested that two principals of Plaintiff, Truman and Michael Orr, appear for examination under oath. After repeated, but failed, attempts to schedule and conduct the examinations, spanning over several months, Defendant's attorneys advised

Plaintiff that Truman's position in refusing to appear for an examination under oath was jeopardizing Plaintiff's claim, that Defendant would not waive its investigative rights under the Policy, and that if Truman continued to refuse to cooperate and submit to an examination under oath in a timely manner, such conduct could result in the denial of Plaintiff's insurance claim. Defendant subsequently denied Plaintiff's claim on July 25, 2007.

Thereafter, Defendant commenced an action in New York State Supreme Court, Madison County, seeking a declaration that its denial of Plaintiff's claim was proper. That court held that Truman's refusal to submit to an examination under oath was a breach of the Policy, but that his noncompliance was not so willful as to warrant the extreme penalty of excusing Defendant from liability under the Policy without giving Plaintiff one last chance to perform. Accordingly, the Supreme Court conditionally granted a motion by Defendant for declaratory relief, unless, within 30 days of service of the order, Plaintiff made its three members available for an examination. The Supreme Court granted Defendant's request for a stay pending resolution of its appeal to the Appellate Division, Third Department. The Appellate Division affirmed the lower court's order on October 29, 2009. *See Erie Ins. Co. v. JMM Props., LLC*, 888 N.Y.S.2d 642, 66 A.D.3d 1282 (N.Y. App. Div. 2009). In December 2009, the examinations under oath of each of Plaintiff's members were conducted.

On May 6, 2010, Truman was indicted in federal court with, among other charges, aiding and abetting arson, insurance fraud and use of fire in the commission of a felony. After a jury trial, Truman was found guilty on those charges. Thereafter, the District Court granted Truman's motion for judgments of acquittal pursuant to Fed. R. Crim. P. 29(c). *See United States v. Truman*, 762 F. Supp. 2d 437, 465 (N.D.N.Y. 2011) (Hurd, J.). Recently, the Court of

Appeals for the Second Circuit vacated the District Court's judgment of acquittal and remanded with instructions to reinstate the judgment of conviction. *See United States v. Truman*, 688 F.3d 129, 144 (2d Cir. 2012).

Familiarity with the remaining undisputed (and disputed) material facts on Defendant's motion is assumed in this Decision and Order, which is intended primarily for the review of the parties.

### D.     Parties' Briefing on Defendant's Motion for Summary Judgment

Generally, in support of its motion for summary judgment, Defendant asserts the following four arguments: (1) Defendant's denial of Plaintiff's insurance claim was proper because Plaintiff failed to cooperate with Defendant's investigation; (2) the Policy's vandalism exclusion precludes Plaintiff from recovering under the Policy; (3) Plaintiff's claim for replacement costs should be dismissed as (a) the Policy does not allow for such costs and (b) the claim is unripe; and (4) Plaintiff's builder's risk claim should be dismissed to the extent it relates to various expenses that Plaintiff never incurred. In the alternative, Defendant argues generally that Plaintiff's expert should be precluded from testifying at trial because his testimony is unreliable. (*See generally* Dkt. No. 77-38 [Def.'s Mem. of Law].)

Generally, in response to Defendant's motion for summary judgment, Plaintiff asserts the following four arguments: (1) collateral estoppel precludes the re-litigation of the issue of Plaintiff's purported breach of the Policy's cooperation clause; (2) the Policy's vandalism exclusion is not applicable; (3) Defendant's motion to dismiss Plaintiff's claim for replacement costs is frivolous; and (4) Plaintiff is entitled to recover all expenses incurred under the builder's risk portion of the Policy. In response to Defendant's alternative argument seeking preclusion of

5

expert witness testimony, Plaintiff argues generally that its expert witness's testimony is in accordance with the prevailing authority regarding computation of actual cash value and therefore should be admissible at trial. (Dkt. No. 81 [Pl.'s Opp'n Mem. of Law].)

Generally, in reply to Plaintiff's response, Defendant asserts the following four arguments: (1) the issue of Plaintiff's failure to cooperate is not precluded by collateral estoppel because a final judgment was never entered in the State court action; (2) the vandalism exclusion relied on by Defendant is applicable to this case; (3) Plaintiff's claim for replacement costs should be dismissed; and (4) the portion of Plaintiff's builder's risk claim concerning expenses Plaintiff never incurred should be dismissed. Generally, in reply to Plaintiff's response to its alternative argument, Defendant argues that Plaintiff's expert witness should be precluded from testifying at trial because his testimony is unreliable. (Dkt. No. 82-2 [Def.'s Reply Mem. of Law].)

### E. Parties' Supplemental Briefing Regarding the Effect of Truman's Criminal Conviction on Defendant's Motion for Summary Judgment

Generally, in further support of its motion for summary judgment, Defendant asserts the following three arguments: (1) Truman's criminal conviction precludes Plaintiff's recovery under the Policy because his acts are imputed to Plaintiff by law and constitute a breach of the Policy provisions; (2) Plaintiff is not an innocent co-insured; and (3) Plaintiff is collaterally estopped from re-arguing the legitimacy of Truman's actions. (Dkt. No. 107 [Def.'s Supp. Mem. of Law].)

Generally, in response to Defendant's supplemental briefing, Plaintiff asserts the following three arguments: (1) Plaintiff is entitled to recover under the Policy notwithstanding Truman's criminal convictions; (2) the criminal acts for which Truman has been convicted are

not binding upon Plaintiff, and therefore, Plaintiff must be deemed an innocent co-insured for purposes of recovery under the Policy; and (3) Truman's conviction does not collaterally estop Plaintiff from enforcing its claim against Defendant. (Dkt. No. 109 [Pl.'s Supp. Opp'n Mem. of Law].)

Generally, in reply to Plaintiff's response to its supplemental briefing, Defendant asserts the following three arguments: (1) Truman's acts are imputed to Plaintiff because Plaintiff acts through its managing members, and Plaintiff is not an innocent co-insured; (2) Truman had the power to bind Plaintiff though his submission of a fraudulent insurance claim on behalf of Plaintiff; and (3) Truman's resignation does not negate the collateral estoppel effect of his criminal conviction. (Dkt. No. 110 [Def.'s Supp. Reply Mem. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing a Motion for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cnty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which recites that legal standard.

## III. ANALYSIS

### A. Whether Truman's Criminal Conviction Eliminates Defendant's Liability Under the Policy

It is undisputed that the terms of the Policy preclude coverage for loss or damage that is intentionally caused by the insured, or where the insured engages in fraudulent acts regarding the

loss.[1] What the parties dispute is whether Truman's acts in causing the fire at the Property, and in fraudulently claiming coverage for the resulting damage to the Property, are imputed to, and/or binding on, Plaintiff.

In support of its argument that Truman's conduct is imputed to Plaintiff, Defendant relies on New York common law, which provides that a corporation acts through its officers, directors and employees. Defendant further cites several cases that support the conclusion that an officer's acts may be imputed to a corporation for the purpose of denying coverage to the corporation under a policy of fire insurance. (Dkt. No. 107, at 2-4 [Def.'s Supp. Mem. of Law].) To be sure, Plaintiff is a limited liability company ("LLC"), not a corporation.

Plaintiff dismisses Defendant's argument that Truman's criminal actions are imputed to it, noting that the law Defendant cites relates to corporations, not LLCs. Instead, Plaintiff argues that it is entitled to recover under the Policy notwithstanding Truman's criminal convictions, citing New York's statutory provisions that an LLC is not bound by the actions of a manager that has no authority to act in that particular matter or does not act in good faith.

Setting aside for the moment Defendant's argument that Truman's actions are imputed to Plaintiff, the Court will first address Plaintiff's argument that Truman's criminal actions could not, and did not, bind Plaintiff.

---

[1] The Policy provides that where a hazard is substantially increased by any means within the control of the insured, coverage is suspended. (Ex. E to Aff. of Marco Cercone, Mar. 1, 2010, Dkt. No. 77-1, at 6 ["the Policy"].) The Policy further provides that Defendant does not "provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any loss or damage for which coverage is sought under this policy." (*Id.*, at 41.)

### 1. Whether Plaintiff is Bound By Truman's Criminal Conduct

Regarding agency of managers, New York Limited Liability Company Law states that

> every manager is an agent of the limited liability company for the purpose of its business, and the act of every manager, including the execution in the name of the limited liability company of any instrument, for apparently carrying on in the usual way the business of the limited liability company binds the limited liability company, unless (A) the manager acting has in fact no authority to act for the limited liability company in the particular matter and (B) the person with whom he or she is dealing has knowledge of the fact that the manager has no such authority.

N.Y. LTD. LIAB. CO. LAW § 412(b)(2) (McKinney 2012). Regarding the duties of managers, the statute provides that "[a] manager shall perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." N.Y. LTD. LIAB. CO. LAW § 409(a). Further, where a manager "performs his or her duties in accordance with this section[, he or she] shall have no liability by reason of being or having been a manager of the limited liability company." § 409(c).

Plaintiff argues that the criminal acts for which Truman was convicted can in no way be defined as the carrying on in the usual way the business of Plaintiff and that Truman did not have the authority to cause the fire that damaged the Property, nor did he have the authority to submit a fraudulent insurance claim for said damage. For support, Plaintiff cites *Caplash v. Rochester Oral & Maxillofacial Surgery Assoc., LLC*, 881 N.Y.S.2d 270, 63 A.D.3d 1683 (App. Div. 2009). In *Caplash*, the court held that a co-equal member of the defendant LLC did not have the authority to bind the LLC by appointing as company counsel an attorney who accepted plaintiff's letter of resignation, because the appointment was not for the carrying on in the ususal way the business of the LLC, i.e., dental surgery. *See Caplash*, 63 A.D.3d at 1685.

Here, Plaintiff's operating agreement provides that its purpose is "to acquire, improve, own, develop, manage, finance, lease and otherwise operate" the Property "and to engage in any and all business in connection therewith." (Ex. 1 to Aff. of Michael Orr, Sept. 27, 2012, Dkt. No. 109-2, at 14-15 ["the Operating Agreement"].) Regarding the authority of the managing members to bind Plaintiff, the Operating Agreement states that they have the power, on behalf of Plaintiff, "to do all things necessary or convenient to carry out the business and affairs of [Plaintiff], including, without limitation . . . [t]o purchase liability and other insurance to protect [Plaintiff's] business and Property[,] . . . [and t]o execute, acknowledge and deliver any and all instruments to effectuate the foregoing." (*Id.*, at 17-18.) Therefore, by the plain language of Plaintiff's Operating Agreement, the filing of an insurance claim is included in the definition of engaging in business in connection with management of the Property. Moreover, Defendant, as the party with which Truman dealt when filing Plaintiff's insurance claim, did not have knowledge that the claim was made fraudulently and without the authority of Plaintiff.

Accordingly, Truman had the authority to, and did, bind Plaintiff when he filed the fraudulent insurance claim. This alone is grounds to grant Defendant's motion for summary judgment because the filing of a fraudulent Notice of Claim by Plaintiff relieves Defendant of its liability under the Policy. However, for the sake of completeness, the Court will address Defendant's argument that Truman's criminal actions are imputed to Plaintiff.

### 2. Whether Truman's Criminal Conduct is Imputed to Plaintiff

Returning to Defendant's original argument that Truman's criminal actions are imputed to Plaintiff, it should be noted that New York Limited Liability Corporation Law is silent regarding the issue of whether the criminal actions of a managing member may be imputed to an LLC.

An LLC, "formed by one or more entities and/or individuals as its members, is an entity that, as a general matter, provides tax benefits akin to a partnership and limited liability akin to the corporate form." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 176 (2d Cir. 2008). Consequently, courts generally describe an LLC as a "hybrid" of the partnership and corporate forms. *See Streetbrains.com, LLC v. Lyris, Inc.*, No. 09-CV-1980, 2011 WL 1483967, at *2 (S.D.N.Y. Apr. 18, 2011) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007)).

Courts have looked to New York common law regarding corporations and partnerships to determine whether LLCs share certain characteristics where the statutory language is silent. For example, both state and federal courts have allowed derivative suits on behalf of New York LLCs to proceed under New York law, even in the absence of explicit statutory authority. *See*, *e.g.*, *Tzolis v. Wolff*, 884 N.E.2d 1005, 1010, 10 N.Y.3d 100, 109, 855 N.Y.S.2d 6, 11 (N.Y. 2008) (concluding that derivative suits should be recognized even though no statute provides for them); *Weber v. King*, 110 F. Supp. 2d 124, 131 (E.D.N.Y.2000). In *Weber*, the court noted that it was "peculiar" that the legislature did not provide for derivative actions for LLCs even though they are a hybrid of partnerships and corporations, both of which allow such actions. *See Weber*, 110 F. Supp. 2d at 131. The court then concluded that the New York legislature's failure to include a derivative action in the Limited Liability Company Law does not prevent the court from recognizing such a right at common law. *Id.* at 131-32.

Here, a characteristic of both corporations and partnerships is that the acts of the principals are imputed to the business entity. *See*, *e.g.*, *Kirschner v. KPMG LLP*, 938 N.E.2d 941, 950, 15 N.Y.3d 446, 465, 912 N.Y.S.2d 508, 517 (N.Y. 2010) (a fundamental principle informing the law of corporations is that the acts of agents are presumptively imputed to their principals); *Allegany Co-op Ins. Co. v. Dimora*, 669 F. Supp. 2d 315, 320 (W.D.N.Y. 2009)

(knowledge of the partnership entity cannot be readily separated from that of its partners). Consequently, the Court may, and does, conclude that the criminal acts of a managing member may be imputed to the LLC, considering the New York legislature's silence in that regard and considering the corporation-partnership hybrid nature of the LLC. *See Weber*, 110 F. Supp. 2d at 131-32. It should be noted that this conclusion is consistent with New York caselaw holding that an LLC may be criminally liable for the acts of its employees committed within the scope of their employment. *See People v. Highgate LTC Mgmt., LLC*, 887 N.Y.S.2d 298, 300-01, 69 A.D.3d 185, 187-89 (App. Div. 2009).

Therefore, because Truman's criminal acts constitute a breach of the Policy and are imputed to Plaintiff, Defendant is entitled to summary judgment in its favor on its affirmative defenses that Plaintiff violated the terms of the Policy when (1) it knowingly and deliberately misrepresented the cause of its loss in the Proof of Loss submitted to Defendant; and (2) increased the hazard to the Property by arranging for incendiary substances to be introduced into the building and ignited for purposes of causing a fire to damage the Property, and by obtaining assistance from others to cause the fire. For this reason, the Court need not, and does not, address the remainder of the parties' arguments regarding Defendant's motion for summary judgment. Furthermore, because Defendant's motion for summary judgment is granted, its alternative motion to preclude Plaintiff's expert testimony is denied as moot.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 77) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's motion to preclude expert witness testimony (Dkt. No. 77) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Plaintiff's #[8] Complaint is **DISMISSED** in its entirety.  The clerk is directed to enter judgment in favor of the defendants and close this case.

Dated: January 14, 2013
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge